## Stephens's Appeal.—Lantz's Estate.

1. One of two administrators having died before an account was settled, the survivor and the representatives of the deceased administrator settled a joint account, including matters of settlement accruing after the death of the one deceased. *Held* to be erroneous.

2. The estate of the deceased administrator was responsible only for what he had done in his lifetime.

3. Two auditors were appointed on an account; only one sat, but the parties appeared and were heard before him by their witnesses and counsel; no exception was taken in the Orphans' Court to his proceeding alone and his report was confirmed. *Held*, that objection to the proceeding was waived.

4. Fees to counsel who are contesting an administration account, or to an administrator litigating for his own personal interest, should not be charged to the estate.

November 19th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Appeal from the decree of the Orphans' Court of *Greene county*, in the matter of the account of the administrators *pendente lite*, &c., of Andrew Lantz, Sr., deceased: No. 146, to October and November Term 1866.

Andrew Lantz, Sr., died about March 4th 1859, and shortly after a caveat was entered to the probate of his will.

Administration *pendente lite* was granted to Andrew Lantz and Henry Lantz. They each filed a separate account of their admin-

istration *pendente lite.* Andrew Lantz, Jr., the administrator, died in July 1862, and letters testamentary of his estate were granted to Mary Lantz and A. J. Porter. In December 1863 the feigned issue was withdrawn, and it was agreed that the account of the administrators *p. l.* should be settled as if they were the regular administrators. Accordingly, to March Term 1864, Mary Lantz and A. J. Porter, executors, &c., of Andrew Lantz, Jr., and Henry Lantz, filed an account of the administration of the estate of Andrew Lantz, Sr. Exceptions were filed to the account by two daughters, Mrs. Stephens and Mrs. Rose, with their husbands, and John Lantz. Messrs. Black & Phelan, and Wyly & Buchanan, were the counsel for the exceptants. The account was inartificially drawn and very long, and was not very intelligible. The exceptions were, that the accountants had not charged themselves with all the estate which came into their hands, nor with that which might have been collected; that they had not charged themselves with their own indebtedness to the estate, and had not charged themselves with interest on the fund in their hands; that they should not be allowed a credit of $500 to Joseph L. McConnell for services, because they were rendered to the accountants, and not to the estate; nor sundry credits to Henry Lantz, one of the accountants, for alleged indebtedness and compensation; nor credits to Andrew Lantz, Jr., for alleged payments by him for the estate.

The account and exceptions were referred to John C. Flennikin and Norman Worley as auditors. Mr. Flennikin never acted. Mr. Worley acted alone: all the parties with their counsel were before him at the different hearings, which were numerous.

He heard a large amount of testimony bearing on the exceptions, which he returned with his report, but reported no facts.

Amongst other testimony, Joseph L. McConnell testified what his services were, and that Henry and Andrew agreed to pay him $500 for his services rendered the testator in his lifetime.

He also testified that the testator acknowledged that the notes he held against Andrew Lantz, Jr., were paid; the testator showed the notes to the witness, and said, when speaking of the notes, he supposed Andrew had whiskey, grain and stock charged against him; he did not destroy the notes. In Andrew's account he had a number of charges for whiskey and grain furnished by him to his father.

The auditor reported that the account was correct as filed, and reported in conclusion:—

"In accordance with established rates and charges of the Waynesburg bar, your auditors have allowed the sum of *six hundred and thirty dollars* as counsel fees for attorneys, for accountants and exceptants.

[Stephens's Appeal.]

" RECAPITULATION.

| | | | |
|---|---|---|---|
| " Balance in hands of accountants, . . . | | | $3659.70 |
| " From which deduct cost of audit: | | | |
| " Buchanan & Wyly, . . . | $200.00 | | |
| " Purman & Ritchie, . . . | 200.00 | | |
| "·Black & Phelan, . . . . | 200.00 | | |
| " D. Crawford, . . . . | ·30.00 | | |
| " Auditor's fees including expenses, . | 200.00 | | |
| " Clerk for recording account, . . | 3.00— | | 833.00 |

" Leaving balance of · . . . . . $2826.70
subject to payment of witness fees, subpœnas, &c."

Stephens and wife filed exceptions to the report, that the claims of Henry and Andrew Lantz, Jr., and J. L. McConnell, should not·have been allowed. Andrew should have been charged for indebtedness to the estate, and that the " fees of auditors' attorneys, last item in auditor's report (were) unlawful and unjust."

The exceptions were overruled, and the report confirmed by the court, September 26th 1865.

Stephens and wife appealed, and assigned for error the matters contained in the exceptions to the report of the auditors ; and also the confirmation of the report " of one auditor alone when the case was referred to two."

*E. M. Sayres*, for appellants.

. *A. A. Purman*, for appellees, cited Mengas' Appeal, 7 Harris 223 ; Loomis's Appeal, 10 Id. 319 ; Quain's Appeal, Id. 510 ; Mahler's Appeal, 2 Wright 220 ; Chew's Appeal, ·9 Id. 228 ; Riddle's Estate, 7 Harris 431 ; Baldwin's Estate, 4 Barr 248–9 ; St. Joseph's Orph. Asylum's Appeal, 2 Wright 535.

The opinion of the court was delivered, January 7th 1868, by

AGNEW, J.—This is a very confused case. The will of Andrew Lantz, Sr., being in dispute, Henry Lantz and Andrew Lantz, Jr., · took out letters of administration *pendente lite*. Andrew Lantz, Jr., died in ·July 1862, having filed a partial account of his administration before his death. Henry Lantz had also filed a partial account. Mary Lantz and A. J. Porter, the administrators of Andrew Lantz, Jr., instead of filing an account of the administration of their intestate upon the estate of Andrew Lantz, Sr., up to the time of the death of Andrew Lantz, Jr., joined with Henry Lantz in settling a final account of the estate of Andrew Lantz, Sr., up to March Term 1864, thus making their intestate a party to the administration of the estate of his father after his own death. This was a clear error. When Andrew Lantz, Jr.,

died he ceased to administer, and his estate was responsible only for what had been done in his lifetime. But no exception has been taken, and we notice this feature only as one of the elements of confusion in the case. Exceptions were filed to this joint final account and two auditors appointed to take the testimony and report upon the exceptions. We next have a report by one auditor only. But as the other auditor never acted and all the parties appeared, produced their testimony and went on before the one who reported, and the court below accepted that report, we must treat this objection as waived, and notice it only as another striking fact of the loose mode of proceeding in order to come to the next and most flagrant. The auditor who made the report simply overrules the exceptions without stating a single fact as found by him, or even giving a reason for so doing, except as to the charges of attorneys, which he says accord with certain established rates and charges of the Waynesburg bar. There are eighteen pages of closely printed testimony in the paper-book, but what facts are to be drawn from this mass of evidence we know not, unless we ourselves should perform the duty which devolved upon the auditor. These reasons would be sufficient alone to reverse the decree and send back the case to be re-examined and restated.

But having taken the pains to read the testimony, we may say that only three of the errors assigned seem to call for a revision.

The charge of Joseph L. McConnell, lumped at the sum of $500, appears to be exorbitant for the small services he seems to have performed. There is no proof what his services were really worth, but he on his oath states that Henry and Andrew Lantz, the administrators, agreed to pay him $500. But could the administrators be permitted to promise to pay any sum he might choose to demand, no matter whether it bears a just proportion to the worth of his services or not, and then to call him as a witness that they promised to pay him so much? This clearly requires revision. Next is the charge of Andrew Lantz, Jr., against his father's estate of $432 in cash. If there were no other evidence of the cash charges than his own book, clearly it would be incompetent.

The argument for the appellees places this exception upon the testimony of Mr. J. L. McConnell that old Mr. Lantz said his son Andrew's notes were paid. But in speaking of these notes the old gentleman supposed that his son had whiskey, grain and stock charged to him and did not destroy the notes. Here there is no mention of cash by old Mr. Lantz, and what was the real ground on which the auditor decided this exception we know not, as he has reported no facts. The third matter is the overwhelming charges of attorneys and auditor against the estate, amounting to no less than $830 in all, besides the fees allowed as items in the account. If it be customary in Greene county to charge against

[Stephens's Appeal.]

an estate the fees of all the counsel who may be concerned in contesting about the estate of a dead man *pro* and *con*, it is best to apply to the practice the old maxim *malus usus abolendus est.* For certainly it is enough for any man's estate to pay the fees only that the administrator or executor necessarily expends in maintaining its integrity, and not those of its enemies who are struggling to defeat it; nor should it be liable even for those charges which the administrator himself may pay in litigating for his own personal interest.

For these reasons the decree of the Orphans' Court is reversed and set aside, and the proceedings ordered to be remitted with instructions to remand the report to the same or another auditor to report upon the testimony the facts bearing upon the three matters of exception referred to in this opinion, and his conclusions thereupon.